## LESTER HARRIS, JR. v. LAURETTE E. PEASE

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 69582

Memorandum filed October 14, 1948.

*Bronson, Rice & Lyman,* of New Haven, and *Billings & Billings,* of Wallingford, for the Plaintiff.

*Wiggin & Dana,* of New Haven, for the Defendant.

COMLEY, J. The defendant owns approximately eight acres of land in Wallingford situated on the southeast corner of Tuttle Road and Cook Hill Road. Upon this tract there is a large residence, built in 1758, which is a beautiful example of

the architecture of that period. The house faces west on the east side of Tuttle Road and commands an extensive view across a wide valley beyond which may be seen Mount Sanford, six miles away, Meriden Mountain, twelve miles away, and Mount Carmel, which is not so distant.

The defendant purchased the property in 1930 and paid $22,000 for it. She and her husband were then elderly persons, he having shortly prior thereto retired from the Yale faculty. They were looking for a secluded and isolated home in a rural area and the property in question met their desires. It is about three miles from the center of Wallingford and four miles from the center of Cheshire. The nearest bus line is about two miles away. The area for a considerable distance is sparsely settled and consists almost entirely of farm land and woodland.

The plaintiff, who makes a business of subdividing and developing tracts of land for residential purposes, owns 51.6 acres which he purchased for $12,000 in 1947 and which are located on the west side of Tuttle Road opposite the defendant's property. At the time he purchased he knew that part of the land, about eight acres in extent, was restricted against any kind of building.

This restriction was created in 1921 by John Doyle, who then owned a large tract of 212 acres which included both the plaintiff's and defendant's properties. John Doyle in that year conveyed to Seymour Brown 204 acres, retaining for his own residence the land and building now owned by the defendant. His deed to Brown contains the following:

"As a further consideration for this deed, the said grantee, for himself, his heirs and assigns, hereby agrees that no building of any kind or nature shall ever be erected upon that portion of the second piece of land hereinbefore described which is bounded and described as follows . . . ." It is unnecessary to repeat here the description of the restricted piece except to note that it is about 815 feet long and 440 feet wide, that it contains approximately eight acres, and that it is located directly across Tuttle Road from the defendant's property. This restrictive covenant is mentioned in all the deeds in the chains of title of both parties, and the plaintiff concedes that it purports to create a covenant running with the land for the benefit of the defendant's property, though he does not concede its validity.

The plaintiff is unable to sell any portion of the restricted area because of the prohibition against building, and he now brings this action for a declaratory judgment determining that the restriction is invalid and unenforceable against him. He bases his attack against the covenant on two grounds, the first of which it is a restraint upon alienation and that, being unlimited in time, it violates the rule announced in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, that a restraint upon alienation must be limited to a period analogous to that fixed by the rule against perpetuities for the vesting of estates in land. The weakness in the plaintiff's argument lies in the assumption that a restrictive covenant is a restraint upon alienation. A restrictive covenant is a restraint upon the use of which land may be put is not a restraint upon the right of free conveyance. A restraint upon alienation either forbids any conveyance to any one, as in *Colonial Trust Co.* v. *Brown,* supra, or limits a conveyance to a designated class of persons, or reserves to the grantor, his heirs and assigns an unlimited option to repurchase, as in *Lewis Oyster Co.* v. *West,* 93 Conn. 518.

The plaintiff argues that a limitation upon the use of real estate in effect limits and reduces the market in which a buyer may be found and is thus, in effect, a restraint upon alienation. There is undoubtedly much to be said for this, but he is unable to point to any decision which so holds and the fact remains that the rules of law governing the validity of restraints upon alienation and those governing restrictive covenants are entirely different. The validity of the latter has never been made to depend upon the element of time. The law is well summarized in Restatement, 4 Property § 399, as follows:

"When the limitation of an easement, or the attempted creation of an interest in land by covenant, is not within one of the rules stated in §§ 370 (limitation of a future interest to an individual), 371 (limitation in favor of a class) and 394 (option to repurchase reserved to conveyor), then the attempted interest in land is not invalid under the rule against perpetuities even though (a) it can continue for a period longer than the maximum period described in § 374 . . . ."

And, again, in Restatement, 4 Property, p. 2375, it is said:

"Third, there is the situation presented by restrictions on the use of land or of a thing other than land. Such a use restriction is not violated by the making of a later conveyance

and hence is not a 'restraint on alienation' within the definition of that term as given in § 404."

For these reasons the first claim of law made by the plaintiff is overruled.

The second claim made by the plaintiff is that the restrictive covenant in question is unreasonable and contrary to public policy and, therefore, void. This claim is not based upon changes in circumstances or conditions since the date of the covenant. No such changes have been shown. The claim rests upon the proposition that even in 1921 the agreement to keep this large eight-acre tract free from buildings of any kind was so opposed to public welfare that it was void from its inception.

The right of an owner who sells a part of his property to impose restrictions upon the use of that property is subject to two conditions. First, the restrictions must not be for an illegal purpose, and, second, they must be reasonable. Berry, Restrictions on Use of Real Property, § 6, p. 10.

In 7 Thompson, Real Property (Perm. Ed.) § 3570, it is said that "a restriction which amounts to a prohibition of the use of the land granted is void," and, again, in § 3571, it is said that "where a restriction is confined within reasonable bounds, and the party in whose favor it is made has an interest in the subject-matter of the restriction, or others in privity with him have such an interest, it will be sustained."

The restriction in the present case was not imposed for an illegal purpose. Presumably it was placed upon the property now owned by the plaintiff in order that those who occupied the homestead on the other side of Tuttle Road might enjoy the unusual and picturesque view and be assured of some degree of privacy. These were legitimate purposes.

The question remains whether the covenant was reasonable when made. This is a question of fact to be determined in the light of all the circumstances surrounding the parties when the conveyance from Doyle to Brown was made in 1921. The decision of this issue has caused the court no little difficulty. It is, indeed, a close question and little help to its solution is to be found in the cases of this or any other jurisdiction.

To prohibit forever the construction of any building upon an area of eight acres is an unusually broad and sweeping

limitation upon the use of real estate. However, the covenant must be examined in the light of the conditions under which it was made. This property was located in an isolated community almost entirely devoted to agricultural pursuits of one kind or another. There appears nowhere in the record any indication that, until the plaintiff bought the property in 1947 for the purpose of a real estate development, there was any public need for the construction of dwellings in the surrounding community. The homestead retained by Doyle and now owned by the defendant was a structure of great charm and antiquity and its value was unquestionably enhanced by the protection which the covenant afforded it. The restricted land on the other side of the road has never been used for any other purpose than farming. It was predominantly, and still is, a community of large, open spaces dotted here and there with an occasional farmhouse.

Such a covenant would, in any urban or suburban area, probably be unreasonable and void. To remove such a large tract from normal and natural development in a populous district would be contrary to public policy, as was the testamentary provision in *Coloniol Trust Co.* v. *Brown,* 105 Conn. 261, where the testator forbade his trustees to erect a building of more than three stories in height upon property located in the heart of the business district of Waterbury.

The plaintiff has failed to show how this covenant has, either at its inception or at any time since, hampered or interfered with the public need. All he has shown is that if he were not compelled to observe the restriction, of which he had full knowledge at the time of his purchase, he could make a business deal advantageous to himself and harmful to the interests of the defendant. This is not a demonstration that the restriction contravenes public policy.

It may well be that the time will come when changes in the condition of this property and the surrounding community will be so material as to indicate an abandonment of the original purpose of the restriction and to make its enforcement inequitable under the circumstances then existing. If so, relief against the covenant can be granted to the owners of the restricted piece under the doctrine of *Armstrong* v. *Leverone,* 105 Conn. 464, but the plaintiff makes no claim that rule announced in that case and affirmed in several subsequent cases is applicable to the present case.

A declaratory judgment is rendered determining (1) that the restriction is valid and enforceable against the plaintiff and (2) that the restriction is a valid bar against the erection of any building upon the restricted area.